### John G. Lobstein v. Vose Sajatovich.

#### Gen. No. 10,863.

1. SCAFFOLD—*when use of a, is at the servant's peril.* If a master is under an obligation to warn his servants to keep off a scaffold built by another contractor, without his knowledge or consent, for the use of bricklayers only, he discharges that duty to a carpenter where a warning was given, which if not heard, could have been heard by such carpenter, and the subsequent use of the scaffold by him is at his own peril.

2. WARN—*master's duty to.* There may be cases where, independently of whether the servant understands the English language or not, the risk is so great, the danger so imminent and of such a nature that the master knows or ought to know concerning it and the servant is not capable of understanding or appreciating it, that it would be the duty of the master to take special pains to see to it that every servant is cautioned before he undertakes such work, but in ordinary cases, unless the master's attention is called to the fact that one or more of his servants does not understand such language sufficiently to comprehend his order or warning, it may well be doubted whether he is guilty of a want of ordinary care if he assumes that his servants understand an order or warning given in such language.

3. SAFE PLACE TO WORK—*when master has performed his duty to*

*provide.* Where a master has provided a safe place upon which a serv-
ant may perform his work and such servant, upon his own volition,
undertakes to perform his work from some other place, he assumes the
risk, and if he suffers injury as a result, the master is not liable.

4.   ORDINANCES—*when incompetent.* An ordinance should not be
admitted in evidence which tends to support a theory of recovery
not sustained by any evidence in the case.

Action for personal injuries.   Appeal from the Superior Court of Cook
County; the Hon. JOSEPH E. GARY, Judge, presiding.   Heard in the
Branch Appellate Court at the October term, 1902.   Reversed.   Opinion
filed January 19, 1904.

ARNOLD TRIPP, for appellant.

B. F. RICHOLSON and R. FRANKENSTEIN, for appellee; C.
STUART BEATTIE, of counsel.

**Statement by the Court.**   Appellee recovered a judg-
ment for personal injuries received in consequence of a fall,
while he was in the employ of appellant, from the fourth
floor of a building in process of erection.   Appellant had a
contract to do the carpenter work on the building, and had
erected a derrick with which to hoist material.   The der-
rick stood upon a firmly constructed floor nine or ten feet
wide and twenty-two feet long.   There is testimony that
"the whole of that floor was covered tight."   The hoist-
ing apparatus was operated through the space left for the
elevator shaft up which timbers were being hauled.   The
derrick stood some four or five feet from the elevator shaft
through which appellee fell.   It further appears not only
from the evidence in behalf of appellant but also from tes-
timony introduced in behalf of appellee that on the morn-
ing of the day when the accident occurred appellant went
up on the platform, where appellee and others were then
working.   He found that the masons had covered over the
opening on that floor for the elevator shaft with a platform
or scaffold upon which they could work while raising the
wall of the building high enough to receive the elevator
machinery.   Finding the shaft thus covered by another
and independent contractor, over whom, so far as appears,
he had no control, appellant had an opening made in this

temporary covering over the elevator shaft large enough to enable his men to hoist their timbers through. He states that he told the men to be careful and keep off that scaffold of the masons', that they had " room enough on the front of the derrick to roll the timbers over," and he says that appellee was there at the time, " standing at the derrick " within a few feet of him. This statement is corroborated by a number of other witnesses, and the only positive contradiction is by one of appellee's witnesses who states that while appellant was there at the time referred to, " he did not say anything." The witness states, however, that he did not then speak English and does not think he would have understood appellant if he had said anything. Appellee's testimony is that he did not see appellant at the building that morning, and that he did not " hear any warning given by Lobstein or anybody else about the platform not being safe or not to use it."

Appellee began work, as he states, on the morning of the day he was injured. There is other evidence tending to show he had worked for appellant the day before. He worked at least two hours in the forenoon helping to hoist timbers through the opening over the elevator shaft. In the afternoon a timber had been hoisted and placed on the " dolly " or roller upon which it was to be pushed to its destination. It did not move easily, and appellee and a nephew of appellant's, who was one of the workers there, got over on the masons' scaffold and began pushing at the timber, when some parts of the scaffold gave way and the two young men fell through the elevator shaft to the basement, inflicting the injuries for which recovery is sought. The scaffold did not fall, but one of the loosely laid joists tipped over, and some of the planks on top of these joists slipped down, carrying the two men through with them.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

By the evidence in this case, certain matters must be deemed established. First, the scaffold from which appellee fell was a temporary structure for the use of the masons

in laying brick, and it was not erected by appellant or by any one over whom he had control. Second, the evidence decidedly preponderates tending to show that appellant when he discovered the scaffold erected by the masons, told his men, including appellee, to keep off of it. Third, appellee had worked there for more than two hours at least, from his own testimony, and more than three hours according to other evidence, when the accident occurred, a period apparently long enough for him to become familiar with the conditions. Fourth, appellant, as master, had furnished a substantial floor upon which his employees, including appellee, were working, perfectly safe for the work they were doing. Fifth, the tipping over of the joist of the scaffold, and consequent fall of the loose boards on its top with which appellee fell, occurred while appellee was not merely standing on the scaffold, but using it as a base from which to shove a heavy timber.

The second of these propositions is not conceded. But as to this, the contention is not so much that appellant did not tell his employees to keep off the masons' platform, but that it is not shown that appellee or the others heard or understood this order to suggest risk or danger; that appellee may not have heard, and if he did hear, may not have understood. If appellant was under obligation to warn his employees to keep off a scaffold erected by another contractor without his knowledge or consent for the use of bricklayers only, a scaffold manifestly not intended or needed for the use of his own workmen, and covering an elevator shaft which the men could see as well as appellant, it is yet to be borne in mind that appellee testifies he did not see appellant there at all; and if in this he is mistaken or testifies falsely, his credibility when he states that he did not hear appellant's orders, is fairly open to question. If, however, he heard or ought to have heard the order, appellee was not justified in disobeying it, merely because appellant did not go into details. Appellee's attorneys suggest that this warning was given not only because appellant regarded the scaffold as dangerous, but because he did not want his work-

men to make use of a scaffold built by another contractor. If it be true that the warning was given, it was, we think, sufficient notice to all the employees who heard it, and the evidence preponderates that if appellee did not hear, he could and ought to have done so.

It is said, however, that appellee may not have understood the order for want of a sufficient knowledge of English. It may well be questioned whether an employer, giving an order or warning to a gang of men of whose nationality or knowledge of the language he has no knowledge, can be said to be guilty of negligence in law or fact, merely because he does not call up each man separately and question him as to whether he understands the English language so as to comprehend what is said. There may be cases where, independently of whether the men understand the language or not, the risk is so great, the danger so imminent, that it would become the duty of the master to take special pains to see to it that every man is cautioned before he undertakes some work of difficulty and danger, which the master knows or ought to know about and which the servant is not capable of understanding or appreciating. See Alton Paving Co. v. Hudson, 176 Ill. 270–273. But in ordinary cases, unless the master's attention is called to the fact that one or more of his employees does not understand the language of the country sufficiently to comprehend his order or warning, it may well be doubted whether he is guilty of negligence, or want of ordinary care, if he assumes that his employees all understand an order or warning plainly given in the vernacular. It would scarcely be contended that if one of his employees was deaf, the master having no knowledge of the fact, he would be held negligent because he did not, in ordinary cases, take the precaution of investigating each individual case to find out whether any employee was hard of hearing. In the case at bar, the evidence does not by any means satisfy us that appellee did not understand English sufficiently to comprehend fully what was said to him in that language. He himself states that he could then understand English a little, but

Lobstein v. Sajatovich.

could not speak it, and he testifies that appellant's brother told him "how to use the derrick and anything of that sort," and he seems to have fully understood. The nurse who had charge of him at the hospital says he understood what was said to him there, and there is other evidence to the same effect. Appellee does not deny that he could have understood the master's order referred to. He says he did not hear it at all. We need not, therefore, pursue the inquiry as to whether he would have understood if he had heard. The preponderating evidence is that the order or warning was given, and that he was where he could and should have both seen appellant and heard him as did the others. In this respect, appellant seems to have performed all the duty which could be reasonably required of him in this case.

Appellee was not directed to go upon the scaffold from which he fell. He did it of his own volition. There was no necessity for his doing so. The same work had been going on there before that scaffold was erected. Appellant had provided a safe place upon which the men could work. The general rule is, as stated in Chicago Edison Co. v. Davis, 93 Ill. App. 284–286, that it is the duty of the master to use ordinary care to provide a reasonably safe place in which the servant may do his work. See C. & G. W. Ry. Co. v. Armstrong, 62 Ill. App. 228–234. That appellant had complied with that duty is not denied. Appellee could have done his work with perfect safety as did his associates who kept off the scaffold. When he chose to go upon the scaffold, he carelessly took the risk, a risk as obvious to him as to any one. Probably the scaffold would have borne his weight, as it did that of the masons, if he had simply stood upon it. But it was obviously put up for that purpose only, not to be used as a place from which to exert strength laterally in pushing a heavy timber on a "dolly." It was the use made of the scaffold which caused it to fall, a use for which appellee, not appellant, was responsible. An employer is not liable as an insurer. C. & E. I. R. R. Co. v. Garner, 78 Ill. App. 281–285; C., R. I. & P. R. R. Co. v. Thomas Lonergan, 118 Ill. 41–49.

Appellant complains that the trial court erroneously permitted the introduction by appellee's attorneys of a city ordinance providing for the construction of substantial floors in each story of a building as soon as the joists or girders are laid. It is clearly shown by the evidence that appellee fell down the elevator shaft and not between the iron girders or floor joists. An examination of the testimony of the witness whose statement is said, in appellee's brief, to tend to support a contrary view, does not bear out that contention. It is beyond controversy and is not in fact controverted that the fall was down the elevator shaft. It is, therefore, immaterial what may have been the theories set up by counsel. Unless applicable under some evidence at least, the ordinance was not admissible, and the objection to its introduction and the subsequent motion to exclude were improperly overruled. That its introduction was prejudicial is not denied, and it certainly may have misled the jury. Appellant could be liable in this case only for negligence contributing to the injury.

Inasmuch as we are compelled to the conclusion that aplee's injury was not caused by negligence or failure of duty on the part of appellant, it is unnecessary to discuss other points presented in the briefs. The judgment must be reversed with a finding of facts.

*Reversed.*